******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# TOWN OF NEWTOWN ET AL. *v.* SCOTT OSTROSKY
## (AC 40975)

DiPentima, C. J., and Bright and Beach, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court denying his motion to dismiss the action and to open and vacate the court's prior judgment that had been rendered in favor of the plaintiff town and several of its agencies and employees. The defendant owned property that was located in the plaintiff town and an adjacent town. The plaintiffs commenced the underlying action seeking, inter alia, injunctive relief compelling the defendant to comply with two cease and desist orders, which alleged violations of zoning and inland wetlands regulations. The present action was consolidated with a similar action brought by the adjacent town and several of its agencies and employees. In July, 2014, the court held an evidentiary hearing on the merits of the action, but neither the defendant nor anyone on his behalf appeared at that hearing. In August, 2014, the court rendered judgment in favor of the plaintiffs. The defendant was served with notice of the judgment in September, 2014, but he did not appeal from that judgment, nor did he move to open the judgment. In February, 2015, the defendant and his attorney were present in court during a hearing on a motion for contempt filed by the plaintiffs, which the court granted, awarding damages to the plaintiffs. A hearing seeking supplemental damages for violation of the injunction was held in May, 2016, and the defendant was present and filed an appearance. The court awarded damages, attorney's fees and costs to the plaintiffs. In December, 2016, the defendant filed a motion to open and vacate the judgment and to dismiss the present action, which the court denied, concluding that it was too late to open the judgment. On appeal, the defendant, recognizing that the motion to open was filed more than four months after the judgment had been rendered, claimed that exceptions to the four month limit established by statute (§ 52-212a) and the applicable rule of practice (§ 17-4) applied. *Held*:

1. The defendant could not prevail on his claim that the trial court lacked subject matter jurisdiction to determine municipal boundaries and that his motion to dismiss, therefore, should have been granted because the court's judgment necessarily determined a boundary line; although the Superior Court does not have the authority to establish municipal boundaries, in reaching its decision, the court did not establish a town boundary but, instead, adjudicated the case using the municipal boundary that both towns recognized and did not dispute.

2. The defendant's claim that the trial court erred in denying his motion to open because he had not received notice of, and did not have an opportunity to be heard at, the July, 2014 hearing was unavailing, as the defendant was well aware of the proceedings, which had occurred over a number of years; even if the defendant did not receive notice of the July, 2014 hearing or have the opportunity to participate in that hearing, and, thus, the trial court's power to entertain a motion to open on that basis was not limited by the four month rule, the court nevertheless did not abuse its discretion in denying the motion to open the judgment, as various cease and desist orders and copies of court orders, subpoenas and notices had been served on the defendant, who was timely served with the August, 2014 judgment and participated in two contempt hearings, including the February, 2015 contempt hearing, the predicates of which were the injunctive orders now under collateral attack, but he waited over two years before he moved to open the judgment.

3. The defendant could not prevail on his claim that, because a court has continuing jurisdiction to enforce and to modify its injunctive orders, the August, 2014 judgment was not subject to the four month rule and could validly be revisited at any time; although a court has continuing jurisdiction to enforce or to modify its injunctive orders in appropriate circumstances, a court is not obligated to grant every motion requesting such relief, and the trial court in the present case did not find that it

lacked the power to open the judgment but, instead, exercised its discretion to deny the defendant's motion to open, which sought to void the injunction ab initio, concluding that there must be an end to litigation at some point.

Argued January 7—officially released July 30, 2019

*Procedural History*

Action, in the first case, for, inter alia, a temporary and permanent injunction requiring the defendant to comply with certain cease and desist orders, and for other relief, brought to the Superior Court in the judicial district of Danbury and transferred to the judicial district of Fairfield, and action, in the second case, for, inter alia, a temporary and permanent injunction requiring the defendant to comply with certain cease and desist orders, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the cases were consolidated and tried to the court, *Hon. Richard P. Gilardi*, judge trial referee; judgment for the plaintiffs in the first case; thereafter, the court granted the motion for contempt filed by the plaintiffs in both cases and awarded damages to the plaintiffs in the first case; subsequently, the court awarded damages, attorney's fees and costs to the plaintiffs in the first case; thereafter, the court, *Radcliffe, J.*, denied the motion to open and vacate the judgment and to dismiss filed by the defendant in the first case, and the defendant in the first case appealed to this court. *Affirmed.*

*Robert M. Fleischer*, for the appellant (defendant in the first case).

*Barbara M. Schellenberg*, with whom was *Jason A. Buchsbaum*, for the appellees (plaintiffs in the first case).

*Opinion*

BEACH, J. The defendant, Scott Ostrosky, appeals from the judgment of the trial court denying his motion to dismiss the action and to open and vacate the court's prior judgment that had been rendered in favor of the plaintiffs, the town of Newtown and several of its agencies and employees.[1] On appeal, the defendant claims that (1) the court lacked subject matter jurisdiction to adjudicate the plaintiffs' claims, (2) he was deprived of his due process right to notice and the opportunity to be heard on the merits of his case, and (3) the court had continuing jurisdiction to enforce and to modify its injunctive orders even if the motion to open and to vacate judgments was untimely. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. This case arises out of efforts by the plaintiffs to enforce cease and desist orders relating to activity on the defendant's property. The defendant's property comprises 21.9 acres of land, of which 5.5 acres are located in Newtown. The majority of the defendant's property is located in the town of Monroe.[2] On August 13, 2013, Steve Maguire, the plaintiff land use enforcement officer for the town of Newtown, issued two cease and desist orders, which were served on the defendant on August 21, 2013. One order cited several conditions that allegedly violated zoning regulations, including the presence of unregistered vehicles, commercial vehicles, inoperable vehicles, waste, abandoned material, and junk accumulation. The order required the defendant to take corrective action within thirty days to avoid fines or legal actions. The second order noted violations of inland wetlands regulations, including "clearing, filling, deposition, and removal of material within the regulated wetland area." Failure to "cease and desist all activities" bore potential fines and penalties of up to $1000 per day. (Emphasis omitted.)

In December, 2013, the plaintiffs initiated the underlying action, seeking, inter alia, injunctive relief compelling the defendant to comply with the cease and desist orders and to submit an application to the Inland Wetlands Commission of the Town of Newtown to remediate affected areas. The complaint also sought civil fines, penalties, and attorney's fees. The defendant was served with this summons and complaint on January 13, 2014, by a state marshal.

On February 7, 2014, Attorney Thomas Murtha[3] filed an appearance on behalf of the defendant. The plaintiffs moved pursuant to Practice Book § 9-5 to consolidate the action with a similar action brought by the town of Monroe and several of its agencies and employees. See *Monroe* v. *Ostrosky*, Superior Court, judicial district of Fairfield, Docket No. CV-14-6041168-S. After the cases were consolidated, Murtha moved to withdraw

his appearance on the ground of a conflict of interest with the town of Monroe. A hearing on the motion to withdraw was scheduled for June 23, 2014. An order included in the notice of hearing required that "[p]ursuant to Practice Book § 3-10, notice must be 'given to attorneys of record' and your client(s) must be 'served with the motion.' " There is no indication in the record that Murtha notified the defendant of his intention to withdraw. At the hearing on the motion to withdraw, Attorney Peter Karayiannis from Murtha's law office appeared on behalf of the defendant. The following colloquy occurred before the court, *Bellis, J.*:

"The Court: Is [the defendant] present?

"[Attorney] Karayiannis: He's not, Your Honor.

"The Court: And do you have the proof of service?

"[Attorney] Karayiannis: We haven't gotten the green card back, but he's aware of the conflict, and he's been advised to retain new counsel.

"The Court: So—and can you represent that he's received a copy of the motion?

"[Attorney] Karayiannis: I don't know if he's—I haven't spoken to him about that, so I wouldn't want to—

"The Court: Does he know—can you represent that he knows it's down today?

"[Attorney] Karayiannis: I don't know if [Attorney] Murtha spoke to him about that. If you would like, I can try to place a call. I know Attorney Murtha [is] in court too.

"The Court: Right. Do you know if he has an objection to it?

"[Attorney] Karayiannis: I do not—I do not believe he has an objection to it, no, Your Honor.

"The Court: All right.

"[Attorney] Karayiannis: We're kind of stuck with it. I mean, if there's a conflict—

"The Court: No, I understand that. I just—I just want to make sure he is not blindsided, that's all. And since the motion was just—you know, we put it on—

"[Attorney] Karayiannis: Understood.

"The Court: —for today. I mean, I'm—I don't know that it's going to make much of a difference anyway, but I'll grant it based on the representation that he consents to the motion being granted. . . . But counsel, since I granted this without [the defendant] here and without knowing for sure that he received a copy of the motion, what I'm going to do is, I'm going to require your office to send correspondence to [the defendant], giving him the new hearing date—

"[Attorney] Karayiannis: Okay.

"The Court: —for both cases, and carbon copy that letter. I mean, it's just going to be one line, the new hearing—you know.

"[Attorney] Karayiannis: Do you want me to send him a copy of the order as well or—today's order or—

"The Court: You probably should—

"[Attorney] Karayiannis: Okay.

"The Court: —tell him that you've withdrawn, here's the new hearing, and then [carbon copy] counsel on it.

"[Attorney] Karayiannis: Okay, Your Honor.

"The Court: I don't want to see a copy. I just want to make sure that we don't pick a hearing date, he doesn't show up and we go forward. This way I'll know that he has [a] hearing—maybe you should ask—get a green card back on it too, just in case.

"[Attorney] Karayiannis: Okay."[4]

On July 23, 2014, the court, *Hon. Richard P. Gilardi*, judge trial referee, held an evidentiary hearing on the merits of the action. Neither the defendant nor anyone on his behalf appeared at the hearing, which was attended by attorneys for both towns. The plaintiffs' counsel apprised the court that Murtha had withdrawn from the case. The attorney for the town of Monroe informed Judge Gilardi that Judge Bellis had granted the motion to withdraw and had "instructed [Murtha's law office] to send a letter to [the defendant], notifying him of the fact that [it was] no longer in the case on his behalf and giving him the date and time [of the new hearing]." The attorney further explained that "[Murtha's law office] confirmed [that] morning to [him] on the phone . . . that [it] did, indeed, send a letter to [the defendant], notifying him of the fact that the matter was going forward and [that Murtha's law office] no longer represented him." The hearing proceeded without the presence of the defendant or an attorney on his behalf.

At the hearing, Maguire testified about the defendant's violations of Newtown's wetlands and zoning regulations.[5] On August 5, 2014, the court issued a memorandum of decision, finding in favor of the plaintiffs. Relying on the evidence presented by the plaintiffs, the court ordered the defendant to comply with Newtown's inland wetlands and zoning regulations by September 17, 2014, and it required the defendant to allow zoning enforcement officers from the towns of Newtown and Monroe on the property for inspection on that date. Failure to comply would result in a fine of $100 per day until the defendant complied with the court's orders. The defendant was served with notice of the judgment on September 5, 2014, by a state marshal. The defendant did not appeal from the court's August 5, 2014 judgment,

nor did he move to open the judgment.[6]

In January, 2015, the plaintiffs filed a "Joint Motion for Contempt," seeking, inter alia, a monetary judgment for the fines resulting from the defendant's failure to comply with the court's order. The motion alleged that the defendant had prevented access to his property for inspection on September 17, 2014. The plaintiffs' counsel certified that a copy of the motion had been mailed to the defendant. On February 15, 2015, the defendant was served by a state marshal with a subpoena to appear at a contempt hearing scheduled for February 25, 2015. The defendant was present at the hearing with an attorney, Richard Grabowski.[7] Grabowski confirmed that the defendant had received the injunctive orders issued in August, 2014. The plaintiffs maintained that (1) they had not been permitted on the property to inspect it, (2) inspection of the defendant's property from adjacent properties showed that the orders had not been complied with, (3) items ordered to have been removed from the property had not been removed, and (4) the defendant had not filed an application with the wetlands agency. The following colloquy occurred:

"[Attorney] Graboswki: [B]ack in August, [2014], when the hearing took place, when Your Honor found in the plaintiffs' favor, my client was not notified that the hearing was going forward. He has since retained an attorney to place a motion to stay the judgment and to open it and give him a chance to have his day in court, so that he could present evidence as to why he's not out of compliance with the zoning ordinances and that nothing on the property is in violation, and he just hasn't had the opportunity to do that as of yet. And that's what we would be looking for. That's what I'm going to be moving for once I get involved with the case.

"The Court: When was the order entered?

"[The Plaintiffs' Counsel]: Your Honor, the order was entered on August 4, [2014], I believe. . . . And also, Your Honor, first off, I believe they were notified of the hearing. But, regardless, we actually served the order by state marshal on the defendant in August of 2014. This is six months later. Nobody in the Newtown case has ever filed an appearance or filed any motions to open judgments or anything. So, [the defendant has] been on notice for some time.

"The Court: Well, let's just cut to the quick. I issued an order in August, [2014]. I want some evidence that it hasn't been complied with. So, if you want to put on a witness."

The plaintiffs then presented evidence. Maguire testified that he went to the defendant's property on September 17, 2014, to inspect the premises. He could not gain access to the property for inspection because a steel gate was closed, chained and padlocked. He testified

that the defendant had not submitted an application to the Inland Wetlands Commission of the Town of Newtown in accordance with the court's orders, and inspection of the defendant's property from adjacent properties had revealed that the defendant had not removed from his property the items detailed in the court's prior order. The plaintiffs submitted as exhibits photographs of the defendant's property showing broken down cars, unregistered vehicles, various types of heavy equipment, and other debris located on the lot. The defendant's cross-examination of Maguire revealed that he had not attempted to contact the defendant when he could not enter the property, and that the local police department advised him not to attempt to enter the property.

The court found the defendant in contempt of court and ordered, again, that the defendant comply with the prior orders. The court also ordered "that [a] monetary judgment be entered against the defendant in the amount of $20,500 per municipality, totaling $41,000, representing the $100 per day fine due to both municipalities pursuant to the orders of the court . . . from August [5], 2014 . . . [and that] the [plaintiffs were] entitled to attorney's fees, but the defendant [was] entitled to a hearing on the matter . . . [and] that the property . . . be accessible to zoning enforcement officers." On March 11, 2015, the defendant was served with a copy of judgment liens, which had been filed in the land records after the defendant had not satisfied the judgment. The defendant appealed from the court's judgment granting the motion for contempt on March 16, 2015. That appeal was dismissed on December 22, 2015, because the defendant had not filed his brief.

On September 1, 2015, Grabowski filed a motion to withdraw his appearance due to a "breakdown in communication." The defendant was served by a state marshal with notice of this motion on September 10, 2015. The court, *Bellis, J.*, granted Grabowski's motion to withdraw on September 21, 2015.

On May 12, 2016, Judge Gilardi held a hearing, resulting in a second supplemental judgment and an award of attorney's fees. The defendant was present but not represented by counsel at this hearing. The following colloquy occurred:

"[The Defendant]: I only got—a marshal brought me a notice a week and a half ago, and I'm completely taken aback and had no chance to respond to any of this or react to it. . . .

"The Court: Wait a minute, wait a minute. This thing's been kicking around since 2013; you couldn't have been that oblivious as to what's going on.

"[The Defendant]: I wasn't aware of the status of the case because, like I said, I was just given a marshal paper a week and a half ago.

"[The Plaintiffs' Counsel]: Your Honor, you may recall that [the defendant] was present on February 25, 2015, and did testify at the—

"The Court: Right.

"[The Plaintiffs' Counsel]: —contempt hearing and was represented by counsel, and it was at that hearing that the court entered a supplemental judgment for [$]20,500 and indicated that [it] would schedule another date to talk about the attorney's fees. So [the defendant] was aware of that.

"The only reason why we're here today instead of a year ago was because [the defendant] filed an appeal, which delayed things. [He] never pursued it; it took us a while to get that dismissed.

"The Court: Okay. I think counsel withdrew, right?

"[The Plaintiffs' Counsel]: Yeah.

"[The Defendant]: Yeah, I no longer have that attorney and that's why there's the confusion.

"The Court: Okay.

"[Counsel for the Town of Monroe]: . . . You'll notice in my affidavit in support of my attorney's fees that [the defendant] has had legal representation in this matter since 2002. At that time, he was represented by Attorney . . . Murtha. Part of the delay between when this matter started and when the hearing was presented in front of Your Honor in August of [2014] was Attorney Murtha withdrawing his appearance in this matter.

"We then came in February of 2015 and, on that day, Attorney . . . Grabowski came on behalf of [the defendant] and took part in the hearing in front of Your Honor, at that point. So, for [the defendant] to say that he's confused and he doesn't know what's going on in this matter, I'm sorry, but that's totally illogical and unreasonable. . . .

"[The Defendant]: I strongly disagree because I have not had any dealings with [Attorney] Grabowski in months, and I am not aware of this court case up until about a week and a half ago. And I'm asking for two weeks just to find an attorney, so I can further go forward with this to sort this out. I have no problem with that; not denying anything else other than the fact that at this day and age, I do not have an attorney. I'd be more than happy to get one because I've only had a week and a half. . . .

"The Court: Well, what—these are—these are the fees that have been incurred up until now, so it doesn't have anything to do with what's going to happen in the future. But if you want the charges to stop, you can do so.

"[The Defendant]: Well, I need to just get an attorney, that's all I'm asking for.

"The Court: I'm not saying—I said you can do so.

"[The Defendant]: I mean, I'm here.

"The Court: No, that's not it. There was a cease and desist with a whole list of things and you ignored all of them.

"[The Defendant]: I disagree with that.

"The Court: Including—wait a minute.

"[The Defendant]: But I also live at my property, so I'm not clear what a cease and desist is. I'm supposed to stay locked in my bedroom to honor it? I'm not really quite sure, but I do live there, I do have a farm, I do have animals and I have to take care of them, and I don't do much else to my property other than that.

"The Court: Okay. Anything else?

"[The Plaintiffs' Counsel]: No, [Your] Honor. We're just—we're requesting an award of attorney's fees, and we're also requesting a supplemental judgment, just so we can quantify the number of the fines from February 25, [2015], to today. That number, as I calculate . . . is 443 days. So, we're requesting an additional $44,300 judgment for each town on top of the [$]20,500 the court already ordered."

On May 12, 2016, the court [rendered] a supplemental judgment against the defendant in the amount of $64,800, plus attorney's fees and costs of $29,618.63, for a total of $94,418.63. Another judgment lien was served on the defendant on May 31, 2016.

On December 12, 2016, Attorney Robert Fleischer filed an appearance in the present case on behalf of the defendant. On the same day,[8] the defendant filed a motion to open and vacate the judgments in the actions brought by both towns pursuant to General Statutes § 52-212a[9] and Practice Book § 17-4,[10] and, additionally, to dismiss the present action.[11]

The defendant offered several rationales in support of his motion. First, he argued, as to the actions brought by both towns, that his due process rights had been violated because he had not received notice of the July 23, 2014 hearing, from which the original injunction arose. He also sought an order to open the supplemental judgments of February 25, 2015, and May 12, 2016, as the judgments were predicated on the injunctions arising from the July 23, 2014 hearing.

The defendant next claimed that the court lacked subject matter jurisdiction to adjudicate the merits of the action brought by the plaintiffs, and that the case should, therefore, be dismissed. He asserted that the boundary line between Newtown and Monroe had not been lawfully established, that the judgment in favor of Newtown depended on a finding that the land on which violations were found was located in Newtown,

and that the court lacked jurisdiction "to fix or change any existing town line boundary." He, thus, requested the court to open all judgments and to dismiss the case brought by Newtown.

On October 2, 2017, the court, *Radcliffe, J.*, heard argument regarding the defendant's motion to open the judgment and to dismiss and, thereafter, denied the defendant's motion in its entirety. It concluded that it was too late to open the judgment. The court further stated "that the defendant had notice, according to all of the information which the court has reviewed throughout the proceedings, and, therefore, there is no basis for [the court to open] the judgment this long after the [rendering] of judgment by Judge Gilardi . . . ." The court concluded by noting that the "judgment was properly [rendered] to begin with, and there must be an end to litigation at some point, and this [was] the point in this case." This appeal from the denial of the motion to open followed.

Recognizing that the motion to open was filed far later than four months after any of the judgments in question had been rendered,[12] the defendant argues, with respect to the motion to open, that two exceptions to the four month limit established by § 52-212a and Practice Book § 17-4 apply. He claims that the court lacked subject matter jurisdiction to grant the injunctive orders because a finding in favor of the plaintiffs required a finding as to the location of the boundary lines between the towns of Newtown and Monroe, and the court lacked the jurisdictional ability to determine municipal boundaries. He further claims that the August 5, 2014 judgment was rendered in violation of his due process rights to notice and an opportunity to be heard. He finally suggests that the four month rule does not apply, in any event, because the court has continuing jurisdiction over its injunctive orders. We disagree with all of his claims and affirm the judgment.

I

The defendant first argues that the court lacked subject matter jurisdiction to determine municipal boundaries and his motion to dismiss, therefore, should have been granted because the court's judgment of August 5, 2014, necessarily, in his view, determined a boundary line. He primarily relies on *Romanowski* v. *Foley*, 10 Conn. App. 80, 521 A.2d 601, cert. denied, 204 Conn. 803, 525 A.2d 1352 (1987), for the proposition that the power to establish town boundary lines lies in the legislature, and the legislature has delegated that power to the municipalities themselves by virtue of General Statutes §§ 7-113 and 7-115. We agree with the general proposition that the Superior Court does not have the authority to establish municipal boundaries, but the proposition does not help the defendant in the circumstances of the present case because the court did not establish a municipal boundary.

In *Romanowski*, this court addressed the issue of whether the trial court had subject matter jurisdiction to determine the correct location of a town boundary line. Id., 80–81. In reaching the conclusion that there was "neither constitutional nor statutory authority for the court to determine or alter town boundary lines"; id., 85; this court observed that "[p]ursuant to constitutional authority, the legislature has delegated authority for establishing such boundaries to the towns, cities and boroughs themselves. [Section] 7-113 directs towns to mark their boundaries. [Section] 7-115 provides for a procedure in the event that adjoining towns dispute the boundary. When *two towns disagree* as to the place of the division line between their respective communities, the [S]uperior [C]ourt, upon application of either, shall appoint a committee of three to fix such disputed line and establish it by suitable monuments and report their doings to said court. When such report has been accepted by said court . . . the line so fixed and established shall thereafter be the true division line between them . . . . The court's only function under this statute is to appoint a committee and accept the report which fixes the disputed line." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 84.

The plaintiff in *Romanowski* owned land in the town of Marlborough. Id., 81. The deed to his property described the eastern boundary as the Hebron-Marlborough town line. Id. The individual defendants owned abutting property, the western boundary of which was the town line. Id. The plaintiff claimed that the correct boundary line was established by the legislature in 1803 and was described in a survey recorded in the Hebron land records in 1804. Id. The plaintiff argued that the established line was altered by a 1981 map which was filed and recorded in the Hebron land records and was accepted by the town of Marlborough. Id. The plaintiff argued that moving the boundary line caused him to lose land to his Hebron abutters, and he requested the court to quiet title to his land and to order the towns to correct the boundary line so that it conformed to the 1804 survey. Id., 81–82.

The trial court denied relief, holding on the merits that the plaintiff had failed to sustain his burden of proof. Id., 82–83. This court agreed with the result but reversed the judgment and ordered that the case be dismissed because the trial court had lacked subject matter jurisdiction over the action, "since the plaintiff sought to have [the trial court] determine the placement of a town boundary line, a matter reserved to the legislature, or to the towns themselves pursuant to proper statutory procedures." Id., 85.

Application of the principles expressed in *Romanowski* defeats the propositions advanced by the defendant. In the present case, the trial court found that there was

no disagreement between the towns of Newtown and Monroe as to the location of the town line. The defendant acknowledged in his brief that the towns agreed to the location of the line, at least "informally."[13] Pursuant to *Romanowski*, then, the trial court had no power to change the line in order to accommodate the claims of the defendant.[14] In the present case, as in *Romanowski*, the towns themselves had no disagreement as to the location of the boundary. In reaching its decision, the court did not establish a town boundary but only adjudicated the case using the municipal boundary that the towns recognized. The court did not err in so doing, and the court properly denied the defendant's motion to dismiss for lack of subject matter jurisdiction.

## II

The defendant's second claim is that the court erred in denying his motion to open because he had not received notice of, and did not have an opportunity to be heard at, the July 23, 2014 hearing. "The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . The exercise of equitable authority is vested in the discretion of the trial court . . . to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Internal quotation marks omitted.) *CUDA & Associates, LLC* v. *Smith*, 144 Conn. App. 763, 765–66, 73 A.3d 848 (2013), citing *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94–95, 952 A.2d 1 (2008). Additionally, "[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." (Internal quotation marks omitted.) *CUDA & Associates, LLC* v. *Smith*, supra, 766, citing *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 103–104, 616 A.2d 793 (1992).

As stated previously in this opinion, Murtha withdrew his appearance prior to the July 23, 2014 hearing, and the defendant has asserted that he was not advised of the withdrawal, of the necessity that he or a new attorney file an appearance, or of the date of the hearing. In the course of denying the motion to open, the court stated that it made "a finding that neither motion [to open][15] was filed in a timely fashion, that there must be an end to litigation, that the defendant had notice, according to all of the information which the court has

reviewed throughout the proceedings . . . .” (Footnote added.) The parties apparently have proceeded on the assumption that the defendant likely did not receive actual prior notice of the July 23, 2014 hearing.[16] We assume for the purpose of this discussion, then, that because of his attorney's withdrawal and apparent failure to follow the prescribed procedure of notifying the client,[17] the defendant did not receive notice of the July 23, 2014 hearing. In the unusual circumstances of this case, we hold that the court, nonetheless, did not abuse its discretion in denying the motion to open.

It is not disputed that the defendant did receive actual notice of the injunction on multiple occasions. He was served with a copy of the memorandum of decision on September 5, 2014, and the defendant stated in a subsequent pleading that he received a copy of the injunction on September 10, 2014. The defendant could have, but did not, move to open the court's August 5, 2014 judgment at that time.

The first motion for contempt was mailed to the defendant on January 15, 2015, and the defendant and his new attorney, Grabowski, were present in court during the hearing on the motion. The defendant had been served personally with notice to attend the hearing. Again, the defendant could have, but did not, move to open the court's August 5, 2014 judgment.

Damages for violating the terms of the injunction were awarded at the hearing, and a judgment lien was served on the defendant. He appealed to this court from the judgment awarding damages, but the appeal ultimately was dismissed because of his failure to file a brief. A second hearing seeking supplemental damages for violation of the injunction was held on May 12, 2016; the defendant was present and filed an appearance. Once again, the defendant did not seek to open the August 5, 2014 judgment. The court rendered a second supplemental judgment on the day of the hearing and notice was sent to appearing parties, including the defendant, on May 20, 2016.

The town of Newtown served the defendant with a second judgment lien on May 31, 2016, and commenced a foreclosure action on October 26, 2016. See *Newtown* v. *Ostrosky*, Superior Court, judicial district of Fairfield, Docket No. CV-16-6060962-S.

Only then, on December 12, 2016, did the defendant move to open the judgments of August 5, 2014, in both actions, partly on the ground that he had not received notice of the hearing on the towns' complaints for injunctive relief heard on July 23, 2014. The court, as noted previously, denied the motion to open because the defendant undoubtedly had knowledge of the injunction for more than two years prior to moving to open that judgment. The defendant claims that his right to due process was violated.

Because we assume for the purpose of this decision that the defendant did not have prior notice of the July 23, 2014 hearing or the opportunity to participate in that hearing, we, therefore, also assume that the court's power to entertain a motion to open on that basis was not limited by the four month rule established by § 52-212a and repeated in Practice Book § 17-4. The court has inherent authority to open judgments rendered in the absence of notice. See *General Motors Acceptance Corp.* v. *Pumphrey*, 13 Conn. App. 223, 228–29, 535 A.2d 396 (1988).

Although the court had the power to open the judgment,[18] it was not required to do so. Our case law recognizes an interest in finality even where the initial judgment sought to be opened was rendered in the absence of jurisdiction, especially where the movant has had a prior opportunity to contest the judgment. *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 240–44, 860 A.2d 1233 (2004) (opening judgment almost three years after it was rendered was not warranted despite lack of subject matter jurisdiction because lack of jurisdiction was not obvious and could have been raised on direct appeal), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005); see also *CUDA & Associates*, *LLC* v. *Smith*, supra, 144 Conn. App. 764, 766–67 (affirming denial of second motion to open where defendant failed to appeal from denial of first motion to open, claiming that default judgment was rendered without notice); see, e.g., *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013).

As recited previously, the defendant was well aware of the proceedings, which had occurred over a number of years. Various cease and desist orders and copies of court orders, subpoenas and notices had been served. Perhaps most notably, the defendant was served with a subpoena to appear at the February 25, 2015 contempt hearing and was, in fact, present. The defendant appealed from that judgment of contempt on March 16, 2015. He allowed that appeal to be dismissed by not filing a brief. He was timely served with the August 5, 2014 judgment and he participated in two contempt hearings, the predicates of which were the injunctive orders now under collateral attack. Yet, he waited over two years before moving to open the judgments. In these circumstances, the court did not abuse its discretion in denying the motion to open.

### III

The defendant finally asserts that, because a court has continuing jurisdiction to enforce and to modify its injunctive orders, the orders of August 5, 2014, could validly be revisited at any time.[19] He relies on cases such as *Hall* v. *Dichello Distributors, Inc.*, 14 Conn. App. 184, 540 A.2d 704 (1988), for the proposition that

the four month rule does not apply to permanent injunctions.

The defendant correctly states that § 52-212a and Practice Book § 17-4 expressly except from the four month rule "cases in which the court has continuing jurisdiction . . . ." Courts generally have the ongoing power to enforce existing injunctions and to modify permanent injunctions when circumstances so dictate. See *Adams* v. *Vaill*, 158 Conn. 478, 482, 262 A.2d 169 (1969) ("[i]t cannot be doubted that courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so"). If a party seeks to open an injunction to enable a court to modify or, hypothetically, to dissolve an injunction, the court has the power to entertain the motion. See id.; see also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 215–16, 884 A.2d 981 (2005); *Hall* v. *Dichello Distributors, Inc.*, supra, 14 Conn. App. 193.

The rather unremarkable proposition that a court has continuing jurisdiction to enforce or to modify its injunctive orders in appropriate circumstances does not compel the conclusion that a court must grant every motion requesting such relief. The court in the present case appears not to have held that it lacked the power to open the judgment.[20] Rather, the court exercised its discretion to deny the motion, concluding that "there must be an end to litigation at some point . . . ."

We also note that the defendant did not seek to modify the injunction in order to accommodate and to respond to a change in circumstances, as in *Adams* v. *Vaill*, supra, 158 Conn. 480–84, or to clarify the application of the injunction, as in *Hall* v. *Dichello Distributors, Inc.*, supra, 14 Conn. App. 190–91. Such actions impliedly accept the validity of the underlying injunction but, for articulated reasons, suggest that the original valid order should be amended. Rather, the defendant in the present action sought to void the injunction ab initio and also urged that the two judgments awarding monetary damages be vacated as well.[21] For reasons stated previously, it was not unreasonable for the court to recognize the interest in finality and the defendant's opportunities to raise the issue in a more timely manner. In these circumstances, the court did not abuse its discretion in denying the motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The term "the plaintiffs" in this appeal refers to the town of Newtown, the Planning & Zoning Commission of the Town of Newtown, the Inland Wetlands Commission of the Town of Newtown, and Steve Maguire, the town of Newtown land use enforcement officer.

[2] The town of Monroe is a plaintiff in a case that was consolidated with this case in the trial court. The defendant's appeal in the Monroe case was argued the same day as this appeal, and we have issued decisions in the two cases simultaneously. See *Monroe* v. *Ostrosky*, 191 Conn. App. 474, A.3d     (2019).

[3] Murtha resigned from the bar of the state of Connecticut, waived the ability to reapply to the bar, and admitted that he had committed professional misconduct. See *Office of Chief Disciplinary Counsel* v. *Murtha*, Superior Court, judicial district of Fairfield, Docket No. CV-16-6058810-S (September 8, 2016).

[4] There is no indication in the record that the defendant actually had been notified of the order granting Murtha's motion to withdraw. On June 23, 2014 the court, *Bellis*, *J.*, issued notices that the hearing on the merits of the plaintiffs' case was scheduled for July 23, 2014. The defendant alleges that he never received notice of the new hearing. There is no indication in the record that the defendant was notified about the hearing.

[5] The plaintiffs also introduced into evidence several exhibits, including photographs documenting several claimed violations of Newtown zoning regulations.

[6] The defendant filed a timely motion to open the August 5, 2014 judgment in *Monroe* v. *Ostrosky*, supra, Superior Court, Docket No. CV-14-6041168-S. The defendant noted in his brief that, "[o]n September 15, 2014, Attorney Michael Nahoum, acting at the request and direction of Attorney Murtha, filed an appearance on behalf of the defendant in the Monroe case, but not the Newtown case, and filed a bare-bones motion to open the injunction . . . (without the required memorandum of law) and a motion for stay. . . . The defendant was not aware that Attorney Nahoum had appeared in the Monroe case and had filed papers on his behalf. . . . The defendant never spoke with Attorney Nahoum or retained him. . . . For reasons unknown to the defendant, Attorney Nahoum abandoned the motion to open and the motion for stay, and those motions were never decided or acted upon by the court." (Citations omitted.)

[7] Grabowski did not file an appearance prior to the start of the contempt hearing. Nevertheless, the court allowed Grabowski to proceed based on his representation that he would file an appearance by the end of that day. The record indicates that Grabowski did not file an appearance until March 4, 2015.

[8] Attorney Fleischer filed an appearance and a similar motion to open on behalf of the defendant in the companion case of *Monroe* v. *Ostrosky*, supra, Superior Court, Docket No. CV-14-6041168-S, on February 6, 2017.

[9] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[10] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

[11] The grounds of the motion to dismiss, to be discussed in the summary of relevant facts and procedural history, did not apply to the companion action brought by the town of Monroe.

[12] The defendant focuses primarily on the judgment of August 5, 2014, ordering injunctive relief. In his view, the supplemental judgments of February 25, 2015, and May 12, 2016, necessarily should be vacated if the initial injunctive orders on which the supplemental judgments are premised are vacated.

[13] The defendant claims that the towns never followed the procedure mandated by § 7-113 to mark the boundary with appropriate monuments. There is no statutory or other authority for the proposition that a boundary does not exist until it is properly monumented. Towns may have the duty to set out proper monuments, but we need not decide the issue in the circumstances of this case.

[14] The location of the boundary mattered in this case because the defendant posits that the land on which alleged zoning and wetlands violations existed was within the town of Monroe, and, therefore, Newtown had no authority over these conditions.

[15] The defendant filed motions to open the judgments in the cases brought by both towns.

[16] The plaintiffs in their brief mention the court's finding that "the defendant had notice," but they do not argue that the court's general and passing reference was a specific finding that the defendant had prior notice of the July 23, 2014 hearing, and the plaintiffs do not argue that any notice referred to by the court is an independent basis for affirming the judgment.

[17] See Practice Book § 3-10.

[18] The plaintiffs argue in their brief that the negligence of counsel in not following proper procedures in the course of withdrawing his appearance does not prevent the application of the four month rule regarding a motion to open. See *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 363–64, 794 A.2d 1043 (2002). In light of our disposition of the appeal, we need not decide whether the withdrawal of counsel, combined with lack of notice to the client, nonetheless requires enforcement of the four month rule.

[19] The defendant has also suggested in passing that the injunctive orders were impermissibly vague and, thus, violative of the right to due process. We find nothing in the record to indicate that this claim was raised in the trial court and, therefore, do not address this unpreserved claim on appeal. *Burns* v. *Adler*, 325 Conn. 14, 20, 155 A.3d 1223 (2017) (concluding that certified question was not raised in trial court and, therefore, was not reviewable).

[20] To the extent that the court's oral ruling in the transcript was ambiguous, we do not resolve the ambiguity by assuming an incorrect application of the law. See *Johnson* v. *de Toledo*, 61 Conn. App. 156, 162, 763 A.2d 28 (2000) ("It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles." [Internal quotation marks omitted.]), appeal dismissed, 258 Conn. 732, 785 A.2d 192 (2001).

[21] The defendant presented no authority for the proposition that the court had continuing jurisdiction over the two judgments for monetary damages.